601 So.2d 301 (1992)
The MIAMI DOLPHINS, LTD., Appellant,
v.
Paul COWAN, as Administrator ad Litem of the Estate of David Arthur Overstreet, Appellee.
No. 91-2420.
District Court of Appeal of Florida, Third District.
June 23, 1992.
Rehearing Denied August 11, 1992.
Weissman, Lichtman & Dervishi, P.A., and Jeffrey M. Weissman and Brian S. Dervishi, Ft. Lauderdale, for appellant.
Joe N. Unger, P.A., Miami, Von Zamft & Lorenzo, P.A., Coral Gables, for appellee.
Before COPE, LEVY and GERSTEN, JJ.
COPE, Judge.
The Miami Dolphins, Ltd., appeal an adverse summary final judgment. The principal issue is whether the controversy should have been referred to arbitration. We conclude that it should have and reverse.
In 1983 the Miami Dolphins entered into three NFL Player Contracts with David Overstreet. These were three, one-year contracts covering the 1983-84, 1984-85, and 1985-86 football seasons. Executed simultaneously was a "Signing Bonus Rider," which provided for payment of $150,000 upon execution, and $100,000 on May 1, 1986. The bonus payment was described as additional consideration for Overstreet's signing of the NFL Player Contracts and "the Player's adherence to all provisions of said contracts... ."
Overstreet became a player for the Miami Dolphins as contemplated in the contract. However, in 1984 he died in an automobile accident. The Miami Dolphins took the position that they had no further obligations under the Signing Bonus Rider. Consequently, they did not make the May 1, 1986 payment of $100,000 to Overstreet's estate.
Paul Cowan, as administrator ad litem of the estate of Overstreet, brought suit in the circuit court for the $100,000. The trial court entered summary judgment in favor of the estate and the Miami Dolphins have appealed.
The Signing Bonus Rider was expressly made part of each of the three NFL Player *302 Contracts executed by the parties. Each NFL player contract provided that "[a]ny dispute between Player and Club [the Miami Dolphins] involving the interpretation or application of any provision of this contract will be submitted to final and binding arbitration in accordance with the procedure called for in any collective bargaining agreement in existence at the time the event giving rise to any such dispute occurs." NFL Player Contract, para. 20.[1] At all pertinent times the parties were governed by the 1982 Collective Bargaining Agreement between the National Football League Management Council and the National Football League Players Association, which sets forth the applicable procedure for resolving any dispute regarding, inter alia, the NFL Player Contract.
The estate concedes the existence of the arbitration mechanism. The estate argues, however, that the Dolphins did not promptly request arbitration and that they have therefore waived any rights under the arbitration provision.
The Collective Bargaining Agreement is subject to federal labor law. Dryer v. Los Angeles Rams, 709 P.2d 826, 828-29 (Cal. 1985). Federal substantive law therefore governs the question now before us. Id. at 829.
"National labor policy favors arbitration," id., and "doubts are to be resolved in favor of arbitrability... ." Id. at 830 n. 5; See also Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1025 (11th Cir.1982); Labor Management Relations Act § 203(d), 29 U.S.C. § 173(d).
Under federal law:
A party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. The party arguing waiver of arbitration bears a heavy burden of proof.
Britton v. Co-op Banking Group., 916 F.2d 1405, 1412 (9th Cir.1990); accord Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir.1985).
In the present case the lawsuit had been in progress for just over three months when the Dolphins raised the arbitration issue in response to a motion for summary judgment. The Dolphins had by then answered and counterclaimed. No discovery of any consequence had occurred in the case.
Activity comparable to the foregoing has been found not to constitute waiver under federal law. Assuming for purposes of this discussion that the Dolphins' proceeding with the litigation without first requesting arbitration constituted acts inconsistent with the right to arbitration, there must be a showing of "prejudice to the party opposing arbitration resulting from such inconsistent acts." Britton v. Co-op Banking Group, 916 F.2d at 1412; accord S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc., 906 F.2d 1507, 1514 (11th Cir.1990), cert. denied ___ U.S. ___, 111 S.Ct. 677, 112 L.Ed.2d 669 (1991); Adams v. Merrill Lynch Pierce Fenner & Smith, 888 F.2d 696, 701 (10th Cir.1989); Rush v. Oppenheimer & Co., 779 F.2d at 887. Here, there is no showing of prejudice. That being so, the matter should have been referred to arbitration.[2]
Reversed and remanded with directions to refer the dispute to arbitration.
NOTES
[1] An alternative arbitration procedure is provided in the event that no collective bargaining agreement is in existence at the time of the event giving rise to the dispute.
[2] The Dolphins contend that the estate's claim is time barred under the terms of the Collective Bargaining Agreement. That contention is a matter to be presented to the arbitrators and is not for us to determine.